[No. 7883. Decided March 17, 1909.]

THE STATE OF WASHINGTON, *on the Relation of Jerry Dominick et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, and MITCHELL GILLIAM, *Judge, Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—ELECTRICAL POWER PLANT—SALE OF POWER FOR PUBLIC PURPOSES. The condemnation of a water power for the purpose of generating electricity to be ·sold to third persons and corporations for municipal and public lighting and for the operation of common carrying railroads is for a public use.

SAME—PERSONS ENTITLED—ELECTRIC POWER—USE OF SURPLUS. The fact that a corporation seeking to exercise the power of eminent domain to generate electric power for public, use had complied with the law of 1907, p. 349, which seeks to .authorize the use of surplus power for private purposes, does not affect its right to condemnation for the public purposes sought, whether the law of 1907 is constitutional or not; since the question as to the proper use of the surplus power does not affect the right to condemn for public uses.

Certiorari to review a judgment of the superior court for King county, Gilliam, J., entered December 23, 1908, decreeing a public use and necessity, in proceedings to condemn water rights for an electric power plant. Affirmed.

*Elmer E. Todd*, for relators. The condemning power company is seeking to take private property in violation of section 16, article 1, of the state constitution. *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820; *State ex rel. Tacoma Industrial Co. v. White River Power Co.*, 39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842; *State ex rel. Harris v. Superior Court*, 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672; *State ex rel. Tolt Power & Transp. Co. v. Superior Court*, 50 Wash. 13, 96 Pac. 519; *Varner v. Martin*, 21 W. Va. 534; *Fallsburg Power & Mfg. Co. v. Alexander*, 101 Va. 98, 43 S. E. 194, 99 Am. St. 855, 61 L. R. A. 129. The mere fact that the company declares in its articles of incorporation that it un-

[1]Reported in 100 Pac. 317.

dertakes to the state of Washington and to the inhabitants thereof the duties and obligations of a public service corporation does not make it a public service corporation. *Falls-burg Power & Mfg. Co. v. Alexander, State ex rel. Harris v. Superior Court,* and *State ex rel. Tolt Power & Transp. Co. v. Superior Court, supra.* If the act of 1907 is intended to give power companies the right to condemn for public uses and private uses combined, if those uses are so combined that they cannot be separated, the right of eminent domain cannot be invoked. *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.,* 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198; *State ex rel. Harris v. Superior Court, supra; Ryerson v. Brown,* 35 Mich. 333, 24 Am. Rep. 564; *Board of Health of Portage Tp. v. Van Hoesen,* 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114.

*George Donworth, Harold Preston,* and *James B. Howe,* for respondents, contended, *inter alia,* that the business of the petitioning company is a public business, and the property sought to be condemned is for a public use. *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.,* 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198; *State ex rel. Harris v. Superior Court,* 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672; *State ex rel. Harris v. Olympia L. & P. Co.,* 46 Wash. 511, 90 Pac. 656; *Inland Empire R. Co. v. Mc-Kinley,* 48 Wash. 675, 94 Pac. 644. The question of public use depends entirely upon the ultimate use and not upon the agency or intermediary. *Brown v. Gerald,* 100 Maine 351, 61 Atl. 785, 70 L. R. A. 472; Lewis, Eminent Domain (2d ed.), §§ 160, 161, 162, 416, 417, 420; *Avery v. Vermont Elec. Co.,* 75 Vt. 235, 54 Atl. 179, 59 L. R. A. 817; *Falls-burg Power & Mfg. Co. v. Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. 855, 61 L. R. A. 129. The right of eminent domain may be exercised by a company which is not to serve the public directly but is to furnish a needed facility to other public service corporations through which the public actually

enjoy the use. *State ex rel. National Subway Co. v. St. Louis,* 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113; *Ryan v. Louisville & N. Terminal Co.,* 102 Tenn. 111, 50 S. W. 744, 45 L. R. A. 303; *Prince v. Crocker,* 166 Mass. 347, 44 N. E. 446; *Calor Oil & Gas Co. v. Franzell,* 33 Ky. Law 98, 109 S. W. 328; *Fort Street Union Depot Co. v. Morton,* 83 Mich. 265, 47 N. W. 228; *In re Niagara L. & O. Power Co.,* 97 N. Y. Supp. 853; *Riley v. Charleston Union Station Co.,* 71 S. C. 457, 51 S. E. 485, 110 Am. St. 579; *O'Hare v. Chicago etc. R. Co.,* 139 Ill. 151, 28 N. E. 923; *Southern Illinois & M. Bridge Co. v. Stone,* 174 Mo. 1, 73 S. W. 453; *Stone v. Southern Illinois & M. Bridge Co.,* 206 U. S. 267, 27 Sup. Ct. 615, 51 L. Ed. 105; *State ex rel. Trimble v. Superior Court,* 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897; 10 Am. & Eng. Ency. Law (2d ed.), p. 1052, 1053. It is immaterial to the right of condemnation for a public use that the legislature has failed to guarantee or regulate the rights of the public therein. *Minnesota Canal & Power Co. v. Pratt,* 101 Minn. 197, 112 N. W. 395, 11 L. R. A. (N. S.) 105; *State ex rel. Shropshire v. Superior Court,* 51 Wash. 386, 99 Pac. 3. The question as to whether the generation of electric power for commercial purposes is a public use is, outside of this state, a divided question. The following cases favor the doctrine of public use. *Rockingham County L. & P. Co. v. Hobbs,* 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; *Walker v. Shasta Power Co.,* 160 Fed. 856; *Grande Ronde Elec. Co. v. Drake,* 46 Ore. 243, 78 Pac. 1031; *Minnesota Canal & Power Co. v. Koochiching,* 97 Minn. 429, 107 N. W. 405, 5 L. R. A. (N. S.) 638; *Minnesota Canal & Power Co. v. Pratt, supra; Hollister v. State,* 9 Idaho 8, 71 Pac. 541. Against the public use are the following cases: *Avery v. Vermont Elec. Co.,* and *Fallsburg Power & Mfg. Co. v. Alexander, supra.* Where a condemnation is made for public use, a mere incidental or temporary use of a part of the property for a private purpose, so long as the public use is maintained, will not deprive the enterprise of its public char-

acter.   *Kaukauna Water Power Co. v. Green Bay & M. Canal Co.*, 142 U. S. 254, 12 Sup. Ct. 173, 35 L. Ed. 1004; *Rundle v. Delaware etc. Canal Co.*, 14 How. 80, 14 L. Ed. 335.   Necessity does not mean absolute necessity, but reasonable necessity depending upon the circumstances of the particular case.   10 Am. & Eng. Ency. Law (2d ed.), p. 1057; *State ex rel. Kent Lumber Co. v. Superior Court, supra; Sayre v. Orange* (N. J.), 67 Atl. 933; *Tracy v. Elizabethtown etc. R. Co.*, 80 Ky. 259; *Hayford v. Bangor*, 102 Me. 340, 66 Atl. 731, 11 L. R. A. (N. S.) 940.   The legislature has almost unlimited power in fixing the terms and conditions upon which condemnations may be made. *Richardson v. Centerville* (Iowa), 114 N. W. 1071.   Not only the present, but the reasonable future needs of the enterprise must be regarded in any question of necessity.   2 Lewis, Eminent Domain (2d ed.), p. 894; *Nicomen Boom Co. v. North Shore etc. Co.*, 40 Wash. 315, 82 Pac. 412; *State ex rel. Ami Co. v. Superior Court*, 42 Wash. 75, 85 Pac. 669; *State ex rel. Liberty Lake Irr. Co. v. Superior Court*, 47 Wash. 310, 91 Pac. 968; *Harlem River etc. Co. v. Arnow*, 47 N. Y. Supp. 438; *Pittsburgh etc. R. v. Peet*, 152 Pa. St. 488, 25 Atl. 612, 19 L. R. A. 467; *O'Hare v. Chicago etc. R. Co., supra; In re New York etc. R. Co.*, 77 N. Y. 248.

RUDKIN, C. J.—The petitioner is a corporation, organized under the laws of this state for the purpose of generating and transmitting electrical current and electrical power for uses claimed to be public, within the purview of our constitution.   As such corporation it instituted this proceeding in the court below to condemn and appropriate the waters of White river flowing past certain lands belonging to the defendants.   The uses and purposes to which the electricity generated and transmitted are to be applied are thus set forth in the findings of the court:

"Said electricity and electric power so to be manufactured by said petitioner will be transmitted by said petitioner and

used and disposed of by said petitioner as follows, and for the following purposes, namely:

"By means of lines of poles with wires and wire cable strung thereon, and other appropriate apparatus and appliances, said petitioner will transmit said electricity (otherwise called electric power) from the point where the same is so manufactured by water power into numerous and various cities and towns in the state of Washington, and in said cities and towns, by like means of transmission and delivery, said petitioner will furnish, sell and deliver said electricity to such cities and towns for lighting streets and public buildings, and for the operation of municipal electric lighting systems maintained by such cities and towns; and in such cities and towns said petitioner, as a public service electric lighting corporation, carrying on the business of general public electric lighting, will also sell, distribute and deliver said electricity in the form of electric light, or current therefor, to private citizens, partnerships and corporations for use in their homes, stores, shops, manufactories, and other business places for lighting the same, said electricity being by said petitioner so delivered and distributed in the business of general public electric lighting by means of lines of poles with wires and wire cables strung thereon, and other appropriate apparatus and appliances, erected and constructed chiefly in and along and over the public streets of such cities and towns, and also by underground conduits in and under such streets with wires and wire cables laid and constructed therein, and other appropriate appliances, under and by virtue of franchises granted and to be granted to said petitioner, or to the assignors of said petitioner, and now vested or hereafter to be vested in said petitioner, and so granted by such cities and towns by ordinances duly and lawfully passed by such cities and towns. And said petitioner will also transmit, furnish, sell and deliver said electricity within the state of Washington to other public service electric lighting corporations lawfully doing business in the state of Washington, and holding valid franchises as aforesaid from cities and towns in said state, and having contracts with said cities and towns, under such conditions that the said electricity will be furnished and supplied by such other corporations within the state of Washington in the form of electric light or current therefor for lighting streets and for carrying on the business of general public

electric lighting in cities and towns under franchises therein, in the same manner as hereinbefore in this paragraph set forth. And said petitioner will also transmit, furnish, sell and deliver said electricity to corporations owning and operating railroads and railways in the state of Washington, said railroads and railways being common carriers of passengers and goods, to be used for operating said railroads and railways within the state of Washington by electric power, in order to enable said corporations to discharge their public functions as common carriers by the operation of their trains and cars by said electric power. And said petitioner, as a public service corporation, may also use said electricity and electric power within the state of Washington for any other public use within the said corporate objects of said petitioner hereinbefore set out, provided, such other public use is really a public use under the valid laws and constitutional provisions in force in the state of Washington. As to all uses which shall be made of said electricity, said petitioner is and will be a public service corporation and has assumed all the duties and obligations applicable to public service corporations."

The court adjudged that the contemplated use was a public use and that the public interest required the prosecution of the enterprise. This order is now before us for review, and the assignments of error present the question whether the contemplated use is a public one. In so far as the electricity generated is to be used for public and municipal lighting, and in the operation of railroads and railways, through the direct agency of the respondent itself, there can be no doubt that the use is public. *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198; *State ex rel. Harris v. Superior Court*, 42 Wash. 660, 85 Pac. 666, 5 L. R. A. (N. S.) 672.

No such question as this was presented for consideration in *State ex rel. Tacoma Industrial Co. v. White River Power Co.*, 39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842, cited by the relator. There the condemning corporation was authorized to own and operate mills and factories, to sell

electrical energy for power purposes etc., and insisted that it had the right to exercise the power of eminent domain in aid of such enterprises. It insisted, in other words, that the term *public use* is synonymous with *public benefit*. This court ruled otherwise, and the entire discussion in the opinion relates to that one question.

Does the fact that the respondent will sell and deliver a portion of its electrical power to third persons and corporations to be by them used for public and municipal lighting and in the operation of railroads and railways afford a sufficient reason for denying to it the right of eminent domain? We think not. Courts look to the substance rather than the form, to the end rather than to the means. If in the end the property is devoted to a public use, the mere agency or instrumentality through which that result is accomplished is a matter of no concern. Thus a railroad company which has leased its road and equipment may still exercise the power of eminent domain, because the property is devoted to a public use through its lessees. *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897. The same rule has been applied to condemnations for union depots, bridges, pipe lines, conduits, subways, etc., where the public use the property through agencies claiming through or under the condemning party. *Fort Street Union Depot Co. v. Morton*, 83 Mich. 265, 47 N. W. 228; *Riley v. Charleston Union Station Co.*, 71 S. C. 457, 51 S. E. 485, 110 Am. St. 579; *Southern Illinois & M. Bridge Co. v. Stone*, 174 Mo. 1, 73 S. W. 453, 63 L. R. A. 301; *Stone v. Southern Illinois & M. Bridge Co.*, 206 U. S. 267, 27 Sup. Ct. 615, 51 L. Ed. 1057; *Calor Oil & Gas Co. v. Franzell*, 33 Ky. Law 98, 109 S. W. 328; *State ex rel. National Subway Co. v. St. Louis*, 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113; *Prince v. Crocker*, 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610.

It is argued that the respondent will have no control over the electricity after sale, and that it may then be used for private purposes by its grantees. This same argument ap-

plies to the respondent itself though perhaps with less force. But as said by this court in *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, *supra*:

"Measured by these tests, there can be no question as to the purposes of the respondent corporation; for both its application and the testimony show that it desires this power that it may further its business as a common carrier. But while the exercise of this right of eminent domain must be guarded jealously, so that the private property of one person may not be taken for the private use of another, after all is said and done, the power to prevent property taken for a public use from being subsequently diverted to a private use must rest rather in the supervisory control of the state than in caution in permitting the exercise of the power. Property taken for a public use by a corporation organized solely to promote a public business may be as easily diverted by it to a private use as it may by one having both public and private objects. It is not the object for which a corporation is formed that prevents it from wrongdoing. The preventive rests in the power of the state to compel it to lawfully exercise its granted privileges."

We are therefore of opinion that so much of the electricity as is destined to be used for public and municipal lighting, and in the operation of common carrying railroads and railways, whether directly through the respondent or indirectly through its assignees or successors, is for a public use.

The petition for condemnation averred, and the court found, that the respondent had complied with the provisions of the act of March 13, 1907, Laws of 1907, p. 349, relating to corporations organized for the purpose of generating and transmitting electrical power for the operation of railroads and railways or for municipal lighting. Section 1 of that act reads as follows:

"Any corporation authorized to do business in this state, which, under the present laws of the state, is authorized to condemn property for the purpose of generating and transmitting electrical power for the operation of railroads or railways, or for municipal lighting, and which by its charter or articles of incorporation, assumes the additional right to

sell electric power and electric light to private consumers outside the limits of a municipality and to sell electric power to private consumers within the limits of a municipality, which shall provide in its articles that in respect of the purposes mentioned in this section it will assume and undertake to the state and to the inhabitants thereof the duties and obligations of a public service corporation, shall be deemed to be in respect of such purposes a public service corporation, and shall be held to all the duties, obligations and control, which by law are or may be imposed upon public service corporations. Any such corporation shall have the right to sell electric light outside the limits of a municipality and electric power both inside and outside such limits to private consumers from the electricity generated and transmitted by it for public purposes and not needed by it therefor: Provided, That such corporation shall furnish such excess power at equal rates, quantity and conditions considered, to all consumers alike, and shall supply it to the first applicants therefor until the amount available shall be exhausted: Provided further, That no such corporation shall be obliged to furnish such excess power to any consumer to an amount exceeding twenty-five per cent. of the total amount of such excess power generated or transmitted by it. In exercising the power of eminent domain for public purposes it shall not be an objection thereto that a portion of the electric current generated will be applied to private purposes, provided the principal uses intended are public: Provided, That all public service or quasi-public service corporations shall at no time sell, deliver and dispose of electrical power in bulk to manufacturing concerns at the expense of its public service functions, and any person, firm or corporation that is a patron of such corporation as to such public function, shall have the right to apply to any court of competent jurisdiction to correct any violation of the provisions of this act."

It is questionable whether the legislature intended by this act to merely enlarge or extend the uses that might be made of electricity generated for public purposes and not needed therefor, or whether it intended to enlarge the power of eminent domain itself. If the former was intended, the act would seem to be entirely free from constitutional objection, while in the latter case the validity of the act would be very

questionable, under previous rulings of this court. But we do not feel called upon to determine that question in this case, for it does not appear that the respondent is attempting to acquire any property by virtue of the provisions of the act of 1907. It simply seeks to avail itself of the provisions of that act in order that it may use electricity generated for public purposes and not needed therefor, in the manner therein provided. If we should hold that the respondent could not use its surplus product in that way, such ruling would have no effect upon its right to condemn for public purposes. To what extent a public service corporation may use electricity generated for public purposes, for purposes heretofore denominated private, under the provisions of the act of 1907, or whether it can acquire property by condemnation to generate electricity to be disposed of under the provisions of that act, independent of its necessities as a public service corporation, can best be determined when some case is presented involving that concrete question.

Without undertaking to decide, therefore, what rights the respondent may have under the provisions of the act of 1907, the judgment of the court below is affirmed.

CHADWICK, GOSE, FULLERTON, MOUNT, and CROW, JJ., concur.

DUNBAR, J., took no part.